IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RICKY BROWN, SR., | ) | CASE NO. 06-30072 |
| VICKI BROWN, | ) | |
| | ) | CHAPTER 13 |
| Debtors. | ) | |

| | | |
|---|---|---|
| ALABAMA DEPARTMENT OF HUMAN | ) | |
| RESOURCES, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| RICKY BROWN, SR, VICKI BROWN, | ) | 2:06-CV-472 |
| AND CURTIS C. REDDING, CHAPTER 13 | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Appellees. | ) | |

**MEMORANDUM OPINION AND ORDER**

Appellant State of Alabama Department of Human Resources ("DHR") appeals the decision of the Bankruptcy Court of the Middle District of Alabama, which overruled two of DHR's objections to the confirmation of the Chapter 13 bankruptcy plan for debtors Ricky Brown, Sr., and Vicki Brown. Specifically, the bankruptcy court determined that the Chapter 13 plan did not have to provide for domestic support obligation claims to be paid in full before disbursements were made to other priority claimants or before secured creditors received payments for more than adequate protection. For the reasons set forth below, the decision of the bankruptcy court will be AFFIRMED.

# I. FACTS AND PROCEDURAL HISTORY

The facts of this appeal are not in dispute. Debtors Ricky Brown, Sr., and his wife Vicki Brown filed a joint Chapter 13 bankruptcy petition and a proposed Chapter 13 plan for confirmation on January 25, 2006. The plan includes a provision for the payment of pre-petition child support arrears through the plan. DHR filed a priority claim for the child support totaling $4,637.45. On February 28, 2006, DHR filed an objection to the confirmation because administrative claims and secured claims were paid before DHR's claim was paid in full.[1] On April 28, 2006, the bankruptcy court entered a Memorandum Opinion and Order, overruling DHR's objection that domestic support obligations must be paid prior to other priority claimants and secured creditors receiving disbursements. Before the bankruptcy court could confirm the plan, DHR filed a notice of appeal. The appeal is fully

---

[1] DHR does not dispute that the Trustee and Bankruptcy Court for the Middle District of Alabama have required Chapter 13 plans to pay child support arrearages in full whether the arrearages are paid through or outside of the plan:

> In the Middle District of Alabama, prior to the implementation of BAPCPA, and following its implementation, the Trustee would not recommend and the Court would not confirm, a chapter 13 plan that did not provide for the full payment treatment of child support arrearage claims as priority claims pursuant to 11 U.S.C. §[§] 1322 and 507. In chapter 13 plans where the plan was confirmed with the payment of child support claims through the plan, claims filed by DHR, or any other holder of a priority child support claims [sic], were paid in full through the plan with payments made by the debtor to the chapter 13 Trustee. These priority child support claims were not and are not treated as general unsecured claims, but were and are treated as priority claims which must be paid in full during the term of the debtors' chapter 13 plan. Even if the debtor's plan provides for the payment of the child support arrearage direct[ly], the claims have always been, and continue to be, treated as priority claims pursuant to §[§] 507 and 1322. However, if the plan provides for the direct payment of those child support claims, then they are not paid through the debtor's payments to the chapter 13 Trustee.

(Trustee's Br. 8-9.)

2

briefed and ripe for resolution.[2]

## II. JURISDICTION

Jurisdiction is properly exercised over this bankruptcy appeal: "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a) (footnote omitted). Furthermore, an appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." *Id.*

## III. STANDARD OF REVIEW

"Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard." *Club Assocs. v. Consol. Capital Realty Investors (In re Club Assocs.)*, 951 F.2d 1223, 1228 (11th Cir. 1992) (citations omitted). "In contrast to the deference given to factual findings, [the district] court examines the bankruptcy court's legal conclusions de novo." *Alexander v. Bonifay Mfg., Inc. (In re Terry Mfg. Co.)*, 332 B.R. 630, 632 (M.D. Ala. 2005) (citing *Club Assocs.*, 951 F.2d at 1228-29). The district court must "independently examine the law and draw its own conclusions after applying the law to the facts." *Ky. Higher Educ. Assistance Auth. v. Norris (In re Norris)*, 239 B.R. 247, 249 (M.D. Ala. 1999) (internal quotation marks and citations omitted).

---

[2] On this date, the court also decides the appeal in *In re Boler*, No. 06-472. The issues in *Boler* are identical to those in this case, but *Boler* presents an additional issue: whether DHR can be paid outside the Chapter 13 plan without its consent.

3

IV. DISCUSSION

This appeal presents two issues: (1) whether domestic support obligation claims must be paid in full before payments are made for other priority claims; and (2) whether claims for domestic support obligation claims must be paid in full before secured creditors receive payments beyond those required for adequate protection. These issues arise under the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (codified in scattered sections of 11 U.S.C.).

*A.  Priority Claims*

DHR argues that because domestic support obligations are listed as first priority under § 507(a), its claims here must be paid before payments are made to any other priority claimants. Section 507(a) sets out ten categories of claims afforded priority status with domestic support obligations listed as having first priority.[3]  11 U.S.C. § 507(a). With the passage of BAPCPA, domestic support obligations were moved from seventh priority to first priority: "The following expenses and claims have priority in the following order: (1) First: (A) Allowed unsecured claims for domestic support obligations." *Id.*

Sections 1322(a)(2) and (b)(4) govern the *sequence* of payments to secured and unsecured creditors, including unsecured creditors with priority claims under § 507. Reading these provisions together, the court concludes that under a Chapter 13 plan distribution to

---

[3] A priority claim is an "unsecured claim that, under bankruptcy law, must be paid before other unsecured claims." Black's Law Dictionary 265 (8th ed. 2004).

4

priority creditors need not be made in the order that they are listed in § 507(a). A Chapter 13 plan is required to "provide for the *full payment*, in deferred cash payments, of *all claims entitled to priority* under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." *Id.* § 1322(a)(2) (emphasis added). Moreover, § 1322(b)(4) reinforces the notion that there is no hierarchy of payments because it specifies that: "[s]ubject to subsections (a) and (c) of this section, the plan may . . . provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim." *Id.* § 1322(b)(4). Priority claims are a type of unsecured claims, and § 1322(b)(4) allows for unsecured claims to be paid concurrently. Thus, a Chapter 13 plan must provide for full payment of priority claims, but there is no provision that requires higher-ranked priority claims to be paid before lower-ranked priority claims.

Moreover, if the court required domestic support obligations to be paid prior to other priority claims, then it would have to ignore § 1326(b)(1), which clearly provides that priority claims for administrative expenses, including the debtor's attorney's fees, are to be paid first: "Before or at the time of each payment to creditors under the plan, there shall be paid – (1) any unpaid claim of the kind specified in section 507(a)(2) of this title." *Id.* § 1326(b)(1). Section 507(a)(2) claims are those for "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28." *Id.* § 507(a)(2). While domestic support obligations are listed before administrative expenses

5

in § 507, the plain language of § 1326 requires that administrative expenses be paid first.[4]

In contrast, a Chapter 7 plan must pay priority claims in the order specified in § 507: "Property of the estate shall be distributed . . . first, in payment of claims of the kind specified in, **and in the order specified in**, section 507 of this title." *Id.* § 726 (emphasis added). There is no parallel provision for Chapter 13 plans. If Congress had intended priority claims to be paid in the order provided in § 507, it could have included a similar requirement for Chapter 13 plans. This court agrees with the bankruptcy court in *Vinnie* that

> [i]t appears that DHR has confused the notion of priority, in the context of a case under Chapter 7, with priority in the context of a case under Chapter 13. . . . The chief flaw in the argument of DHR is that it fails to distinguish cases under Chapter 13 from cases under Chapter 7.

*Vinnie*, 345 B.R. at 390.

Additionally, other courts that have evaluated this same issue have concluded domestic support obligation claims do not need to be paid before other priority claims. *See In re Sanders*, 347 B.R. 776, 780 (N.D. Ala. 2006) (concluding that "had Congress intended domestic support obligations to be paid before all other § 507 claims in a Chapter 13 [p]lan,

---

[4] Before the passage of BAPCPA, § 1326(b)(1) required that claims under § 507(a)(1), which were at that time claims for administrative expenses, be paid before or concurrently with other claims. 11 U.S.C. § 1326(b)(1) (2004), *amended by* 11 U.S.C. 1326(b)(1). However, when BAPCPA was enacted administrative expenses were moved to § 507(a)(2), the reference in § 1326(b)(1) was also changed to § 507(a)(2). 11 U.S.C. § 1326(b)(1). These changes bolster the conclusion that Congress intended priority claims for administrative expenses to be paid before or contemporaneously with other priority claims. These changes do not support DHR's argument that claims for domestic support obligations must be paid first. Moreover, there is a policy rationale for allowing the fees of the debtor's attorney to be paid first: "[w]ere it otherwise, that is if the argument DHR advances here were to prevail, debtors with large child support arrearages would most likely be denied access to the Bankruptcy Courts because their lawyers could not be paid until late in the case." *In re Vinnie*, 345 B.R. 386, 389 n.2 (Bankr. M.D. Ala. 2006).

6

it would not have included the language found in § 1326(b)(1)"); *Vinnie* 345 B.R. at 388 (finding that under § 1322 "all of the subsections in Section 507 are treated alike"). Accordingly, the court determines that domestic support obligations are not required to be paid in full prior to disbursements to other priority claimants. The holding of the bankruptcy court as to this issue is due to be affirmed.

*B.     Secured Creditors*

Relying on *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006), DHR also argues that post-confirmation payments to secured creditors must be limited to only adequate protection payments until domestic support obligations are paid in full.[5] The court in *DeSardi* determined that secured creditors were not entitled to equal payments each month during the plan period. *DeSardi*, 340 B.R. at 806. This analysis does not support – or even relate to – the contention that domestic support obligations must be paid in full before secured creditors receive payments exceeding those required for adequate protection. Unsecured priority claims were not at issue in *DeSardi*.

DHR offers no other authority for this argument. Instead it asserts that a "secured creditor is not be [sic] prejudiced by waiting over time for the bulk of its claim to be paid" in part because "the secured creditor has the right to seek relief from the automatic stay to reclaim its collateral." (DHR's Br. 18.) This contention rings hollow for two reasons. First,

---

[5] "When a trustee uses, sells, or leases property of the estate, the court on request of an entity that has an interest in [the] property . . . shall prohibit or condition such use, sale, or lease, as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). A trustee can furnish adequate protection to a secured creditor via "a cash payment or periodic cash payments." *Id.* § 361(1).

7

the right to seek relief from the automatic stay remains toothless as long as the debtor complies with the requirements of the court-confirmed plan.[6] More fundamentally, this argument ignores the very nature of secured claims: "Because a secured claim represents the holder's rights in specific property . . . the holder of an allowed secured claim has not just a general claim but property which it is entitled to receive. In that sense, secured claims are first priority claims in bankruptcy cases." *In re Sanders*, 341 B.R. 47, 51 (Bankr. N.D. Ala.) (internal quotation marks and citation omitted), *aff'd*, 347 B.R. 776 (N.D. Ala. 2006). Finally, this argument ignores the plain language of § 1322, which permits Chapter 13 plans to "provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim." 11 U.S.C. § 1322(b)(4).

DHR argues as a matter of policy that disbursements to secured creditors should be limited until domestic support obligations are paid in full. DHR asserts that if secured creditors are paid first they "will have no incentive to be more selective in determining to whom they sell and finance property." (DHR's Br. 17.) This argument turns the fundamentals of secured transactions and the separation of powers upside down. As the *Sanders* court explained, "[p]erhaps DHR should lobby Congress for creditors to have incentives to not sell property to people with children (as they are most likely to have domestic support obligations), but that is not within the province of this court." *Sanders*, 347 B.R. at 781. This court is not at liberty to change the policy established by Congress in

---

[6] A secured creditor is not automatically entitled to relief from an automatic stay to reclaim collateral. *See* 11 U.S.C. §§ 362(d), 362(h) (delineating when a party qualifies for relief from a stay).

Case 06-30072   Doc 70   Filed 01/24/08   Entered 01/24/08 10:34:10   Desc Main
Document      Page 8 of 9

BAPCPA.

The bankruptcy court did not err in holding that the plan is not required to pay domestic support obligations in full before making distributions to secured creditors.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED and ADJUDGED that the decision of the bankruptcy court – that a Chapter 13 plan is not required to provide for domestic support obligations to be paid in full before disbursements are made to other priority claimants or to secured creditors beyond payments for adequate protection – is AFFIRMED. Because the bankruptcy court has not yet confirmed the plan, this matter is REMANDED to the bankruptcy court for further proceedings not inconsistent with this opinion.

An appropriate judgment will be entered.

DONE this 24th day of January, 2008.

        /s/ W. Keith Watkins
    UNITED STATES DISTRICT JUDGE

9

Case 06-30072   Doc 70   Filed 01/24/08   Entered 01/24/08 10:34:10   Desc Main
Document      Page 9 of 9